## SUPREME COURT.

JOHN J. PALMER, Special Receiver, &c., agt. JAMES B. MURRAY and others.

Where, in an action for the foreclosure of a mortgage by the plaintiff as a *special receiver*, an agreement was entered into and consummated by the plaintiff and the mortgagor, by which a portion of the mortgage debt was paid by the mortgagor, and his new bond taken, secured by a mortgage upon the same premises (except one lot which had previously been sold), for the balance, whereupon the plaintiff executed releases of the premises from the first mortgage; and it was agreed that the sum so paid and the substituted mortgage should be retained and held by the plaintiff as a substitute for and in the place of the original premises, and as subject to the original mortgage (the mortgage in suit) in like manner and to the same extent as said premises were subject to said mortgage, and not otherwise, and that the original bond of the mortgagor should not be affected by the agreement, and prescribing certain terms and conditions in reference to the sale of the mortgaged premises by the plaintiff, and the disposition and liability of all the funds received therefor,

*Held*, that the agreement was not a settlement and determination of the controversy between the parties; it was made for their mutual convenience, without disturbing or in any way affecting the claim of either; the form of the securities and the situation and character of the fund were only slightly changed.

This altered state of the securities and fund, by and under the agreement, prevented a final decree for the foreclosure and sale of the mortgaged premises in this action; but presented a proper case for a *supplemental complaint*, as the agreement was new matter arising since the filing of the original complaint, but did not vary the rights of the parties.

VOL. XVIII. 35

Palmer agt. Murray.

The original plaintiff having died pending the action, *held*, that his successor was authorized to continue the action, in the name of the new special receiver, by *supplemental complaint*.

*New - York, Special Term, March,* 1860.

PETITION, by Charles A. Davis, appointed special receiver as the successor of John J. Palmer, deceased, for leave to file a supplemental complaint, and that the suit be continued in his name, as the successor of Palmer, as such special receiver.

GEO. N. TITUS, *for petitioner*
SIDNEY S. HARRIS, *for defendants.*

ALLEN, Justice. This suit was commenced in 1845, in the late court of chancery, to foreclose a mortgage given to the President of the North American Trust and Banking Company, upon several lots in the city of New-York, and which mortgage had come to the hands of the plaintiff as special receiver appointed by the court of chancery. The cause was put at issue by a replication to the answer of the defendants; proofs were taken, and the set-off or counter-claim of the defendant, set up in the answer, was refused.

In January, 1851, the mortgagor and the special receiver entered into an agreement respecting this and another mortgage upon other property, reciting the pendency of this suit undetermined, and the sale of one of the lots mortgaged, the proceeds of which were held by the special receiver as subject to said mortgage, by which the special receiver agreed to release and discharge the several lots from the lien of the mortgage, upon being paid a certain amount in money, and receiving security upon the same lots for a certain other sum specified, and that the sum so paid in cash, less the amount necessary to pay the taxes and assessments charged upon the premises, together with the substituted mortgage, or the new mortgage to be given upon the several lots, should be retained and held by the special receiver, as a substitute for and in place of the said lots, and as subject to the mortgage, to foreclose which

this suit was brought, in like manner and to the same extent as said lots were then subject to such mortgage, and not otherwise, or for any other or different purpose. It was further agreed, that the personal liability of the mortgagor, for the payment of his bond, should not be in anywise impaired, increased, or affected by the agreement, or anything which should be done under or in pursuance thereof, and that all moneys which the special receiver should receive as the proceeds or value of the lots, and in pursuance of the agreement, after the payment of all taxes and assessments, should be deposited and kept at interest in the New-York Life Insurance and Trust Company, until some further agreement should be made between the parties, or until the rights of said parties, or their representatives, to or in the said lots, or the proceeds thereof, should be determined by the judgment or decree of some court having jurisdiction in the premises; and that, upon such determination, the said proceeds should be disposed of and treated in the same manner as said lots would have been had they remained subject to said first mortgage.

In February, 1851, the agreement was fully carried into effect, and the mortgagor paid to the special receiver, in cash, upon the mortgage in suit in this action, the sum of $6,800, and gave his bond, secured by a mortgage upon twelve of the sixteen lots before mortgaged for $6,700, and the special receiver executed the releases of the lots from the first mortgage, in pursuance of the agreement. No further steps were taken in the action, and in February, 1858, Mr. Palmer died, and the petitioner was appointed special receiver in his place.

The agreement between the parties in the release of the mortgaged premises, on execution of it, did not settle and determine the controversy between the parties. There was no settlement, adjustment, or compromise of the claims of the litigant parties to this action. The arrangement did not change the relation of the parties to the fund in dispute, but was made for their mutual convenience, without disturbing or in any way affecting the claim of either; and the agreement, in terms, contemplates a further litigation, unless it should be

obviated by an amicable and final arrangement. The substance of the controversy and litigation remained the same, while the form of the securities, and the situation and character of the fund, were slightly changed. Hence the suit was not discontinued, nor any provision made for its disposal, or for the costs which had already accrued. The bond of the mortgagor was not surrendered or cancelled, neither was the mortgage satisfied, although every parcel of the mortgaged premises was discharged from its lien, and the suit is spoken of as still pending undetermined. As a suit for the foreclosure of the mortgage, it could not have been prosecuted to a final decree for the foreclosure and sale of the mortgaged premises. Perhaps, under a proper stipulation, the parties might have litigated the action in its present form to a final decree, with a view to settle the rights of the parties to the fund in its altered condition, and enable the parties to settle upon the basis of the final decree. But there was no difficulty in framing a supplemental bill, under and by which the questions at issue between the parties might have been presented in proper form to, and settled by, the court, and by which the parties would have had the benefit of the litigation to the extent that it had progressed—thus preventing unnecessary delay and expense which would have ensued from commencing *de novo*. It is true, the plaintiff might, by a new action, have had the rights of the respective parties to the fund determined, or such action might have been commenced by the mortgagor claiming the fund on deposit, and to have the substituted securities cancelled.

But, whatever form the litigation might have assumed, it would necessarily have to be determined upon facts existing anterior to the commencement of this action. It would have been, of course, to permit a supplemental bill to be filed by Mr. Palmer. It is the appropriate remedy to bring before the court any new matter which has happened since the filing of the bill; and it is proper, not only for the purpose of putting in issue new matter which may vary the relief prayed in the original bill, but also to put in issue matter which may form

Palmer agt. Murray.

the plaintiff's right to the relief originally prayed. The new events, or new matters, must not change the rights or interests of the parties before the court, for, if they do, the bill will not be strictly supplemental. (*Story's Eq. Pl.*, §§ 332, 336.) The new matter here does not vary the rights of the parties. When a party has an inchoate right at the time of filing his original bill, but which merely requires a formal act to complete it, which is not performed till afterwards, such formal act may be brought before the court by supplemental bill. (2 *Barb. Ch. R.* 61.) So, when an original bill is filed by a judgment creditor to reach property of the defendant after the return of an execution unsatisfied, a supplemental bill may be filed to reach subsequently acquired property. (*Eager* agt. *Price*, 2 *Paige*, 333; *Mutter* agt. *Chancel*, 5 *Russ.* 42.) The agreement, and the acts of the parties in pursuance of it, so altered the condition and character of the securities and fund, that the proper relief in respect thereof could not have been obtained under the original bill, and therefore it would have been a fit case for a supplemental bill at the suit of Mr. Palmer in his lifetime. (*Adams* agt. *Dowding*, 2 *Mad.* 53; *Milner* agt. *Lord Harwood*, 17 *Vesey*, 144.) But the death of Mr. Palmer, the original complainant, occurring, and the petitioner having succeeded to his position and rights as special receiver, the action, if continued, must be continued in the name of the new receiver; and this can only be done by a bill of revivor, or by a supplemental bill. If this event was the only event to be entered in the bill for the continuation of the suit, it would seem that a supplemental bill would be proper, rather than a bill of revivor—the rule being that when the interest of a complainant, suing in *autre droit*, determines, the suit must be continued by supplemental bill, and not by bill of revivor. (*Metc.* 51; *Cooper's Eq. Pl.* 75.) But, be this as it may, the change of parties, as well as the other events which must modify the form of the relief to be granted, made a supplemental bill necessary. An order of the court is necessary to the filing of a supplemental bill; but, in ordinary cases in chancery, the defendant is not entitled to notice of the application for such

order, (*Eager* agt. *Price, supra; Lawrence* agt. *Bolton,* 3 *Paige,* 294); and the court will only examine the application so far as to see that the privilege is not abused for the purposes of delay and vexation to the defendant. If the supplemental bill be filed without sufficient grounds, the defendant may demur. (*Lawrence* agt. *Bolton, supra; Tonken* agt. *Littibridge, Cooper,* 83.) The laches of Mr. Palmer, and the delay in the prosecution of the suit, is urged as a reason for refusing this application. But the fund is in the court—that is, in the hands of the petitioner, who is an officer of the court, and his title to and right to retain it is controverted, and it is fit and proper that the right should speedily be determined.

The defendant cannot complain of the delay, for the reason that he might have expedited the suit if he had chosen to do so; and to deny the motion would only cause still greater delay, by compelling a new action, either by the petitioner or the defendant.

The prayer of the petition must be granted.